# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

The Board of Trustees, in their capacities as Trustees of the National Roofing Industry Pension Fund, et al.,

    Plaintiff

v.

Lamar and Elise H. Noorda and Foursquare Roofs & Walls, Inc.

    Defendants

Case No.: 2:16-cv-00170-JAD-CWH

**Order Denying Motions for Summary Judgment**

[ECF Nos. 48, 63]

    The trustees of the National Roofing Industry Pension Fund and three other employee-benefit funds (the Trusts)[1] sue Lamar and Elise Noorda and Foursquare Roofs & Walls, Inc. (Foursquare) to recover unpaid employer contributions that are allegedly owed under a collective-bargaining agreement that non-party Noorda Sheet Metal Company (NSM) entered into with non-party United Union of Roofers Waterproofers and Allied Workers Local 162 (Union).[2] The Trusts allege that Foursquare is the successor and alter ego of NSM and, thus, is liable in contract for NSM's failure to pay employer contributions. The Trusts allege that the Noordas, who owned NSM then and partly own Foursquare now, are the alter egos of both entities and, thus, are also liable in contract for some of the unpaid contributions.[3]

    The Noordas and Foursquare now move for summary judgment on all of the Trusts' claims, arguing that the alter-ego and successor-liability claims are barred by the doctrines of issue preclusion and claim preclusion, and the breach-of-contract claim fails as a result.[4] The

---

[1] The National Roofing Industry Pension Fund (Pension Fund), National Roofers Union Health and Welfare Fund (Welfare Fund), Roofers and Waterproofers Research and Education Joint Trust Fund (Trust Fund), and Roofers Apprentice and Journeyman Training Trust Fund Local 162 for Clark, Esmeralda, Lincoln & Southern Nye Counties (Apprentice Fund).

[2] ECF No. 1.

[3] The Trusts also seek equitable remedies like an audit of Foursquare's books and records and an injunction requiring Foursquare to comply with the terms of the collective bargaining agreement.

[4] ECF No. 48.

1

Noordas also argue that the Trusts are enjoined from suing them by virtue of the discharge that they received in their personal Chapter 7 bankruptcy case. The Trusts move for summary judgment on their claim that Foursquare is NSM's successor.[5] I deny the defendants' motion because their arguments are either wrong or not fully developed, and I deny the Trusts' motion because triable issues preclude summary judgment on their successor-employer claim.

## Background[6]

NSM entered into collective-bargaining agreements with the Union in 2007 and 2010. When the 2010 agreement expired in 2012, NSM terminated its relationship with the Union, but nine months later entered into a memorandum of understanding that made it a party to a new collective-bargaining agreement, which expired on July 31, 2015.

NSM, which fabricated and installed sheet-metal products, was owned and operated by the Noordas for two decades. But when the company ran into serious financial difficulty, they shuttered it in December 2013 and put it into bankruptcy the next month. Elise Noorda incorporated Foursquare a few months later. The Noordas also filed personal bankruptcy petitions and received a discharge under Chapter 7 of the Bankruptcy Code in April 2014.

Before that discharge was entered, two of the plaintiff trusts in this case[7] and the Union filed an adversary proceeding under the Noorda's bankruptcy case, and alleged three claims challenging the dischargeability of the Noorda's debts arising from NSM's alleged breach of the collective-bargaining agreement. The adversary proceeding was set for trial, but before that occurred, the Ninth Circuit issued an opinion that eviscerated the adversary plaintiffs' second claim against the Noordas,[8] which was based on the theory that they are ERISA fiduciaries. So, the adversary plaintiffs moved to dismiss their adversary proceeding. The bankruptcy court

---

[5] ECF No. 63.

[6] Unless otherwise stated, the information in this section is undisputed by the parties. This information is provided to give context, and should not be construed as factual findings.

[7] The Pension Fund and the Welfare Fund.

[8] *Bos v. Board of Trustees*, 795 F.3d 1006 (9th Cir. 2015), *cert. denied*, —U.S.—, 136 S. Ct. 1452 (2016).

granted the motion and dismissed their claims with prejudice under FRCP 41 and FRBP 7041.[9] The bankruptcy court then entered a judgment of dismissal in favor of the Noordas.

## Discussion

**A.     Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[11]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[12]

If the moving party satisfies Rule 56 of the Federal Rules of Civil Procedure by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[13]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[14]

---

[9] I take judicial notice of the existence and content of the record in the adversary proceeding against the Noordas, *In re Lamar Von Noorda and Elsie H. Noorda*, Adv. Proc. No. 14-01077 (Bankr. D. Nev. Apr. 29, 2014), under FRE 201, but not for the truth of any matter asserted therein.

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[11] *Kaiser Cement Corp. v. Fisbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[12] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[14] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2003) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

**B.	Defendants' motion for summary judgment [ECF No. 48]**

Foursquare and the Noordas argue that they are entitled to summary judgment because the alter-ego and successor-liability claims are barred by the doctrines of issue and claim preclusion, and the Trusts need one of those to stick to hold them liable for NSM's alleged breach of the collective-bargaining agreement. The Noordas also argue that their debt to the Trusts was discharged under Chapter 7 of the Bankruptcy Code.

*1.	Issue preclusion*

Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."[15] Defendants argue that whether they are the alter egos of NSM or if Foursquare is a successor employer of NSM are issues that were decided in their favor in the adversary proceeding.

It is undisputed that U.S. Bankruptcy Judge August Landis entered an order granting the adversary plaintiffs' motion to dismiss their adversary proceeding against the Noordas with prejudice under FRCP 41 and FRBP 7041. Also undisputed is that Judge Landis then entered a judgment of dismissal in favor of the Noordas. "The preclusive effect of a federal-court judgment is determined by federal common law."[16] The Ninth Circuit has explained that "[a] voluntary dismissal of a claim prior to any adjudication and without any stipulated findings of fact does not actually litigate any issue[,]" even if the dismissal is with prejudice.[17]

Judge Landis did not adjudicate the merits of successor or alter-ego liability or make any stipulated findings of fact when he granted the adversary plaintiffs' dismissal motion and

---

[15] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).

[16] *Id.*

[17] *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (collecting cases) (concerning stipulation to dismiss a claim with prejudice).

4

dismissed that case with prejudice.[18]  Indeed, when Judge Landis provided the procedural background and alleged facts during his oral ruling on the motion, he was very clear to state on the record that "those are allegations, not findings, only to the extent that they're findings of fact. It's just to state that's what the complaint alleges."[19]  The defendants point to no part of the adversary proceeding's record—and I have not found any—where any issue of fact was adjudicated or stipulated-to by the parties.  So, issue preclusion cannot attach to the voluntary with-prejudice dismissal of the adversary claims.

### 2. *Claim preclusion*

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"[20]  "Claim preclusion applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties."[21]  The Ninth Circuit explained in *Garity v. APWU National Labor Organization* that the first factor "is outcome determinative" and depends upon whether the two suits "'are related to the same set of facts and *whether they could conveniently be tried together*.'"[22]

But the defendants don't mention—let alone analyze—whether the Trusts' claims in this case could conveniently be tried with the claims in the adversary proceeding.[23]  The prior suit

---

[18] *See In re Lamar Von Noorda and Elise H. Noorda*, Case No. 14-01007, ECF Nos. 192 (Bankr. D. Nev. Mar. 10, 2016) ("Order Granting Motion and Dismissing Adversary Proceeding), 220 ("Transcript of Motion to Dismiss Adversary Proceeding . . .").

[19] *See In re Lamar Von Noorda and Elise H. Noorda*, Case No. 14-01007, ECF No. 220 at 7:18–20.

[20] *Taylor*, 553 U.S. at 892 (quoting *New Hampshire*, 532 U.S. at 748).

[21] *Garity v. APWU Nat. Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quotation marks and quoted references omitted).

[22] *Id.* (quotation marks and quoted references omitted).

[23] ECF No. 48 at 7–8 (The entirety of the defendants' argument for why the first factor is met is that "many of the alter ego allegations in the Plaintiffs' current Complaint were taken *verbatim* from Plaintiffs' Amended Complaint in the Adversary Proceeding" and, "[i]n both cases, "Plaintiffs allege that there is such a 'unity of interest' among NSM, Foursquare, and the Noordas that all three should be treated as a single entity.").

5

was an adversary proceeding against the Noordas alleging three claims that their debt under the collective bargaining agreement was not dischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).[24] In this case, the Trusts seek to hold the Noordas liable for NSM's alleged breach of the collective-bargaining agreement under the theory that they are NSM's alter egos. And the Trusts seek to hold Foursquare liable for NSM's alleged breach of the collective-bargaining agreement under the theory that it is NSM's alter ego and its successor employer. I decline to analyze for the defendants in the first instance whether the claims in this case could have conveniently—or even possibly—been tried by the bankruptcy court in an adversary proceeding challenging the dischargeability of the Noordas' alleged debt to the Trusts. So, I find that the defendants have not demonstrated that claim preclusion attaches to the with-prejudice dismissal of the dischargeability claims.

### 3. *Discharge injunction*

Defendants' final argument is that the Trusts' alter-ego claim against them is barred by the Chapter 7 discharge injunction. There is no dispute that the Noordas received a discharge under Chapter 7 of the Bankruptcy Code. Also undisputed is that their "order for relief" was entered on January 23, 2014.[25] Defendants explain that a Chapter 7 discharge "'discharges the debtor from all debts that arose before the date of the order for relief . . . .'"[26] They also explain that "debt" means a "'liability on a claim'" and "claim" means a "'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, umnatured, disputed, undisputed, legal, equitable, secured or unsecured.'"[27]

According to the defendants, the Trusts are seeking to hold the Noordas liable for NSM's "Audit Liability," which concerns NSM's failure to pay employer contributions that were owed

---

[24] *In re Lamar Von Noorda and Elise H. Noorda*, Case No. 14-01007, ECF No. 93 ("First Amended Complaint to Determine Certain Debt to be NonDischargeable") (Bankr. D. Nev. Mar. 23, 2015).

[25] This is the date that they filed their bankruptcy petitions. *See In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005) ("The filing of a petition under Chapter 7 constitutes an 'order for relief.'").

[26] ECF No. 48 at 13 (quoting 11 U.S.C. § 727(b)).

[27] *Id.* (quoting 11 U.S.C. §§ 101(12), 101(5)(A)).

6

between 2011–2013. The Trusts respond that isn't true, and point to paragraph "XLVI" of their complaint, which contends that, after the court declares that Foursquare is the alter ego of NSM, it should declare that the Noordas are the mere shells of Foursquare and hold them individually liable "for any and all amounts owed by Foursquare that arose after January 23, 2014, the date that the Noordas filed their Chapter 7 Bankruptcy Petition."[28] If the Trusts sought to hold the Noordas liable for unpaid contributions that arose before January 23, 2014—and it does not appear that they did—they have now abandoned that claim. So, defendants' argument is factually wrong.

In sum, the defendants' issue-preclusion and discharge-injunction arguments lack merit, and their claim-preclusion argument is just too undeveloped for me to rule on it. Defendants have therefore failed to demonstrate that they are entitled to summary judgment.

**C.     The Trusts' motion for summary judgment [ECF No. 63]**

The Trusts move for summary judgment on their claim that Foursquare is a "successor employer" to NSM and, thus, is obligated to contribute to the Trusts under the collective-bargaining agreement. "[S]uccessorship liability" is "a common-law doctrine" developed by federal courts in the "the fields of labor and employment" "'that provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities.'"[29] In *National Labor Relations Board v. Jeffries Lithograph Co.*, the Ninth Circuit set forth seven factors that courts must consider when deciding whether a new employer is a "successor" to an old one: (1) "there has been a substantial continuity of the same business operations;" (2) "the new employer uses the same plant;" (3) "the same or substantially the same work force is employed;" (4) "the same jobs exist under the same working conditions;" (5) "the same supervisors are employed;" (6) "the same machinery, equipment, and methods of production are used;" and (7) "the same

---

[28] ECF No. 54 at 32 (quoting ECF No. 1 at 13).

[29] *Resilient Floor Covering Pension Trust Fund Bd. of Trustees v. Michael's Floor Covering*, 801 F.3d 1079, 1090 (9th Cir. 2015) (*Resilient Floor*) (quoting *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)).

7

product is manufactured or the same service [is] offered."[30] The list is not "exhaustive"; the "touchstone" of the inquiry is "whether there was an 'essential change in the business that would have affected employee attitudes toward" being represented by the union.[31] "The primary question in labor and employment successorship cases is whether, under the totality of the circumstances, there is substantial continuity between the old and new enterprise."[32] And, "[d]epending on the statutory context and the type of claim, certain factors may warrant greater or lesser emphasis."[33]

The Trusts provide evidence to show that the *Jeffries* factors weigh in favor of finding that Foursquare is NSM's successor for purposes of NSM's obligation to pay employer contributions under the collective-bargaining agreement.[34] The defendants do not directly address any of the *Jeffries* factors in responding to the Trusts' motion. They focus instead on the standards for claims that the Trusts did not move for summary judgment on, like breach of contract and alter ego.[35] Defendants do, however, provide evidence that Foursquare's business model and operations are quite different from what NSM's were.[36]

Defendants admit there is some element of ownership common between NSM and Foursquare. They also admit that Foursquare does the same type of architectural-sheet-metal, metal-roofing, and metal-siding work that NSM did. But they provide Lamar's deposition

---

[30] *N.L.R.B. v. Jeffries Lithograph Co.*, 752 F.2d 459, 463 (9th Cir. 1995) (quoted reference omitted).

[31] *Id.* at 463–64 (quoting *Premium Foods, Inc. v. N.L.R.B.*, 709 F.2d 623, 627 (9th Cir. 1983)).

[32] *Resilient Floor*, 801 F.3d at 1090 (quotation marks, quoted references, and brackets omitted).

[33] *Id.* at 1091.

[34] *See* ECF Nos. 63-2–63-39 (providing, among other evidence, the Noordas' responses to requests for admissions; deposition testimony of the Noordas; deposition testimony of Connie Berrett, who was employed by NSM and then by Foursquare; deposition testimony of Kelly Regester, who was employed by NSM but not Foursquare; deposition testimony of Paul Dean, who used NSM for "very specialty-type work" for commercial projects and Foursquare for one such project; deposition testimony of Joe Carter, who worked as a foreman for NSM and then Foursquare, and who testified that some of NSM's other employees went to Foursquare, too).

[35] *See generally* ECF No. 64.

[36] *See* ECF No. 64-1 (deposition testimony of Lamar Noorda).

8

testimony to show that Foursquare does not do the conventional-roof or waterproofing work that NSM did. It does not manufacture furniture or fireplaces like NSM did, and it does not perform any projects that require bonding because, unlike NSM, it has no bonding capacity. Lamar further testified that Foursquare has significantly less employees than NSM ever did. According to Lamar, at its peak, NSM had 45 office workers while Foursquare has never had more than three—two of them are Lamar and Elise. Unlike NSM, which had 75 field workers, Foursquare has never had more than eight. Lamar testified that NSM owned or leased as many as 60 vehicles in its prime, while Foursquare has two. According to Lamar, NSM's gross annual revenues exceeded $40 million, but Foursquare's are $2 million. Finally, Lamar testified that, at its peak, 80% of NSM's work was for large public-works projects, while Foursquare's jobs are typically $250–$500 jobs like "little kitchen repairs."

It is undisputed that Foursquare uses the same office that NSM did and acquired some of its office equipment, machinery, tools, and vehicles. But the record is not clear if the vehicles were actually owed by NSM or another of Noordas' entities. It is undisputed that most of the few workers that Foursquare has were NSM employees, but it is not clear, especially in light of Lamar's testimony about the difference in scale between NSM's operations versus Foursquare's, if the jobs and working conditions are the same. It is also not clear from this record if Foursquare has the same customers that NSM did.[37]

Finally, although the Trusts provide evidence to show that Foursquare does some of the same projects that NSM did, Lamar testified that the size and complexity of those jobs are significantly less than what NSM did, and there are many types of work that NSM did that Foursquare does not do. Lamar is emphatic that Foursquare does not—and cannot, for many reasons—do the same work that NSM did. When viewing the facts in the light most favorable to the defendants and considering the totality of the circumstances, I conclude that genuine issues

---

[37] *C.f. Resilient Floor*, 801 F.3d at 1095 (concluding that whether the new employer has the "same body of customers [as the old one] . . . is of special significance when determining successorship for purposes of withdrawal liability under the MPPAA construction industry exception").

of material fact preclude me from finding as a matter of law that Foursquare is NSM's successor employer.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the defendants' motion for summary judgment and the Trusts' motion for summary judgment **[ECF Nos. 48, 63] are DENIED**.

IT IS FURTHER ORDERED that this matter is referred to a magistrate judge for a mandatory settlement conference.

Dated: March 30, 2018

_____
U.S. District Judge Jennifer A. Dorsey